UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TAMMI LADNER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-10067** |
| **WALMART, INC.** | **SECTION: "T" (2)** |

## ORDER

Plaintiff Tammi Ladner has filed suit against her employer, Walmart, Inc. ("Defendant"), alleging a violation of Title VII of the 1964 Civil Rights Act, § 704, 42 U.S.C. § 2000e-3(a).[1] Before the Court is a Rule 56 Motion for Summary Judgment filed by Defendant seeking judgment in its favor and dismissal of Plaintiff's claims.[2] Plaintiff filed an opposition.[3] With leave of Court, Defendant filed a reply.[4] This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331. Oral argument is not necessary. For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute concerns Plaintiff's Title VII claim against her employer for retaliatory harassment. Plaintiff is a current Walmart associate.[5] In 1999, Plaintiff began working for Defendant.[6] From approximately December 2011 to December 2017, Plaintiff was a Maintenance

---

[1] The antiretaliation provision of the Act prohibits an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a).
[2] R. Doc. 38.
[3] R. Doc. 45.
[4] R. Doc. 49.
[5] R. Doc. 38-3, p.1.
[6] *Id*.

1

Associate at Store No. 541 in Covington, Louisiana.[7] One of Plaintiff's duties was to clean the ladies' and men's restrooms.[8]

Plaintiff claims that, over a span of four to six months in 2013 or 2014, a co-worker named "Harry" inappropriately brushed by her or touched her on three occasions.[9] Plaintiff allegedly reported the sexual harassment to Albert Hevener, with whom she was living at the time and who was the Daytime Maintenance Supervisor for the store.[10] She also says she reported the incidents to a number of managers, including submitting a written report to the Human and Resources Department.[11] About ten months after the third occasion of sexual harassment, Plaintiff claims she reported the sexual harassment to "Ned," whom she believed to be a manager's helper or assistant manager in the automotive department, and requested that "Ned" inform the store manager.[12] According to Plaintiff, the delay in reporting the sexual harassment to "Ned" was due to her anxiety and "Ned" said he would take care of it.[13] Defendant has no record of any complaints of sexual harassment filed by Plaintiff.[14]

Within a few days of reporting the sexual harassment, Plaintiff states, she saw Harry and several floor managers enter an office.[15] "Very soon after Harry [met with the floor managers]", Plaintiff says she began to witness fecal messes that appeared "deliberate" and "odd" in the

---

[7] *Id*.
[8] *Id*.
[9] R. Doc. 1, p.1; R. Doc. 38-3, p.2. "Harry" was later identified as Harry Masson, III, an employee in the automotive department. R. Doc. 45, p.2. According to Plaintiff's deposition, "Harry" first placed the "zipper of his pants on [her] behind; a couple months later, he "brushed [her] side on purpose"; and a couple months after that, he "put[] his right hand on [her] right shoulder" to pass by her. R. Doc. 38-2, pp.27-29.
[10] R. Doc. 45, p.2.
[11] *Id.*
[12] "Ned" was later identified as Ed DiGiovanni, either a TLE Service Manager or a TLE Service Writer. *Id.* and n.1. Mr. DiGiovanni, described by Defendant as an "hourly Automotive Supervisor," has denied in his deposition that Plaintiff ever complained to him about anything. R. Doc. 38-1, p.7.
[13] R. Doc. 45, p.2.
[14] R. Doc. 38-1, p.2.
[15] R. Doc. 45, p.2.

women's and men's restrooms.[16] As a Maintenance Associate, Plaintiff cleaned up these fecal messes, which Plaintiff describes as "fecal harassment."[17] Plaintiff says she reported the fecal messes to Mr. Hevener and other managers, some of whom described the messes as looking as if they had been done on purpose.[18] At some point, the smeared feces ceased occurring in the women's bathroom, but continued in the men's bathroom.[19] The incidents declined and "dwindled off" until they "stopped within a year" of Plaintiff's transfer to a store in Mississippi in December 2017.[20] Since her transfer, Plaintiff has not suffered any similar harassment.[21]

According to her complaint, Plaintiff filed a Declaration under Penalty of Perjury on December 12, 2017, to open an EEOC charge.[22] Plaintiff filed the final draft of the charge on July 30, 2018.[23] Plaintiff's charge was dismissed, and she received the right-to-sue letter dated August 6, 2018.[24] Subsequently, Plaintiff filed this suit on October 18, 2018.[25] Plaintiff contends Defendant through some of its associates began a campaign of retaliatory harassment consisting of urinating and smearing feces on the walls and floors of restrooms.[26] She seeks damages for the

---

[16] R. Doc. 45, p.3.
[17] R. Doc. 38-3, p.1; R. Doc. 45, p.1.
[18] R. Doc. 45, p.3. Plaintiff asserts she believes that five or six women were responsible for the messes, because of their actions and because she would see them don rubber gloves before entering the bathroom and then find the gloves in the trash thereafter. Plaintiff asserts these women would later announce that the restroom needed attention. She claims she told Mr. Hevener about the messes and that he said he had told management, but that there was nothing he could do about it. She claims Mr. Hevener took photographs of the messes and reported them to managers *Id.*, pp.3-5. In Plaintiff's deposition, however, she indicated that Mr. Hevener "wasn't a manager or nothing. But the store manager would tell him to tell us what to do. … He usually drives the forklift. But he just does what he's told." R. Doc. 38-2, p. 16. In his deposition, Mr. Hevener denied ever seeing the messes, denied that he was Plaintiff's supervisor, believed the complaints were "stupid and foolish," and stated that the "fecal harassment" never happened. *Id.* p.5.
[19] R. Doc. 45-1, p.4.
[20] *Id.*
[21] R. Doc. 38-1, p.8.
[22] R. Doc. 1, p.1. Defendant states that Plaintiff's counsel completed a "Pre-Charge Inquiry" with the EEOC in February 2018, alleging that Plaintiff had been "fecally harassed" from 2013 until the time the Charge was filed. R. Doc. 38-1, p.8.
[23] R. Doc. 1, p.1.
[24] *Id.*; R. Doc. 38-1, p.8.
[25] R. Doc. 1, p.1.
[26] *Id.*, pp.1-2.

women's and men's restrooms.[16] As a Maintenance Associate, Plaintiff cleaned up these fecal messes, which Plaintiff describes as "fecal harassment."[17] Plaintiff says she reported the fecal messes to Mr. Hevener and other managers, some of whom described the messes as looking as if they had been done on purpose.[18] At some point, the smeared feces ceased occurring in the women's bathroom, but continued in the men's bathroom.[19] The incidents declined and "dwindled off" until they "stopped within a year" of Plaintiff's transfer to a store in Mississippi in December 2017.[20] Since her transfer, Plaintiff has not suffered any similar harassment.[21]

According to her complaint, Plaintiff filed a Declaration under Penalty of Perjury on December 12, 2017, to open an EEOC charge.[22] Plaintiff filed the final draft of the charge on July 30, 2018.[23] Plaintiff's charge was dismissed, and she received the right-to-sue letter dated August 6, 2018.[24] Subsequently, Plaintiff filed this suit on October 18, 2018.[25] Plaintiff contends Defendant through some of its associates began a campaign of retaliatory harassment consisting of urinating and smearing feces on the walls and floors of restrooms.[26] She seeks damages for the

---

[16] R. Doc. 45, p.3.
[17] R. Doc. 38-3, p.1; R. Doc. 45, p.1.
[18] R. Doc. 45, p.3. Plaintiff asserts she believes that five or six women were responsible for the messes, because of their actions and because she would see them don rubber gloves before entering the bathroom and then find the gloves in the trash thereafter. Plaintiff asserts these women would later announce that the restroom needed attention. She claims she told Mr. Hevener about the messes and that he said he had told management, but that there was nothing he could do about it. She claims Mr. Hevener took photographs of the messes and reported them to managers *Id.*, pp.3-5. In Plaintiff's deposition, however, she indicated that Mr. Hevener "wasn't a manager or nothing. But the store manager would tell him to tell us what to do. … He usually drives the forklift. But he just does what he's told." R. Doc. 38-2, p. 16. In his deposition, Mr. Hevener denied ever seeing the messes, denied that he was Plaintiff's supervisor, believed the complaints were "stupid and foolish," and stated that the "fecal harassment" never happened. *Id.* p.5.
[19] R. Doc. 45-1, p.4.
[20] *Id.*
[21] R. Doc. 38-1, p.8.
[22] R. Doc. 1, p.1. Defendant states that Plaintiff's counsel completed a "Pre-Charge Inquiry" with the EEOC in February 2018, alleging that Plaintiff had been "fecally harassed" from 2013 until the time the Charge was filed. R. Doc. 38-1, p.8.
[23] R. Doc. 1, p.1.
[24] *Id.*; R. Doc. 38-1, p.8.
[25] R. Doc. 1, p.1.
[26] *Id.*, pp.1-2.

affront to her dignity, emotional distress, punitive damages, attorney fees, costs, and all other general and equitable relief.[27]

## LAW AND ARGUMENT

### I. Summary Judgment

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[29] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[30] The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.[31] "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial."[32]

### A. Retaliation Claim

Under Title VII, it is unlawful for an employer "to discriminate against any of [its] employees…because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."[33] If a plaintiff provides only circumstantial evidence in alleging retaliation

---

[27] *Id.*, p.2.
[28] Fed. R. Civ. P. 56(a).
[29] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398–99 (5th Cir. 2008).
[30] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).
[31] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).
[32] *Smith v. Reg'l Transit Auth*., 827 F.3d 412, 420 n.4 (5th Cir. 2016).
[33] 42 U.S.C. § 2000e-3(a).

4

under Title VII, the *McDonnell Douglas* burden-shifting framework governs the plaintiff's claim.[34] Under the *McDonnell Douglas* framework, an employee claiming retaliation must first establish a prima facie case of retaliation.[35] "To establish a prima facie case of retaliation, an employee must demonstrate that (1) [s]he engaged in an activity that Title VII protects; (2) [s]he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action."[36]

Here, Plaintiff provides only circumstantial evidence in alleging retaliation under Title VII. Therefore, the *McDonnell Douglas* burden-shifting framework governs Plaintiff's claim. Thus, under the *McDonnell Douglas*, Plaintiff must establish that (1) she engaged in protected activity; (2) she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.

Once the plaintiff establishes a prima facie case (including the causal-link element), the burden shifts to the defendant to produce a legitimate, non-retaliatory reason for its adverse employment action.[37] The defendant's burden is one of production, not persuasion.[38] If the defendant satisfies its burden, the burden of production shifts back to the plaintiff to show defendant's reasons were pretext for unlawful retaliation; that is, but for the protected activity, the adverse employment action would not have occurred.[39]

---

[34] *Gollas v. Univ. of Texas Health Sci. Ctr. at Houston*, 425 F. App'x 318, 321 (5th Cir. 2011) (citing *Montemayor v. City of San Antonio,* 276 F.3d 687, 692 (5th Cir. 2001); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)).
[35] *See Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008); *Trotta v. Cajun Conti, LLC*, No. CV 15-1186, 2017 WL 131551, at *3 (E.D. La. Jan. 13, 2017).
[36] *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007) (citing *Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 439 (5th Cir. 2005)).
[37] *McDonnell Douglas Corp.*, 411 U.S. at 802.
[38] *Gollas*, 425 F. App'x at 321 (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004), and *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).
[39] *Id.* at 321-22 (citing *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 806 (5th Cir. 2007); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)).

i. **Protected Activity**

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."[40] For a complaint to qualify as protected activity, Plaintiff must show that she had a reasonable belief that the employment practice she complained about violated Title VII.[41] Additionally, the filing of an EEOC charge is protected activity under Title VII.[42]

Here, Plaintiff contends she engaged in protected activity by complaining of sexual harassment to management.[43] She stated in her deposition that she knew sexual harassment was wrong and that she could report such behavior to her employer.[44] Defendant asserts in its motion that Plaintiff did not engage in protected activity because she never made a documented claim to management pursuant to Defendant's written policy regarding discrimination and harassment.[45] Defendant thus contends there is no showing that Defendant knew about Plaintiff's complaints regarding sexual harassment.[46] However, given that Plaintiff stated she made complaints of sexual harassment to persons she believed to be managers, and accepting her statements as true for purposes of this motion, the Court finds Plaintiff has sufficiently established that she engaged in protected activity.

ii. **Adverse Employment Action**

In *Burlington N. & Santa Fe Ry. Co. v. White*, the Supreme Court opined that "[t]he antiretaliation provision [of Title VII] protects an individual not from all retaliation, but from

---

[40] *Ackel v. Nat'l Commc'ns. Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Administrators of the Tulane Educ. Fund.*, 284 F.3d 642, 657 (5th Cir. 2002)).
[41] *See EEOC v. Rite Way Servs., Inc.*, 819 F.3d 235, 237 (5th Cir. 2016).
[42] *Balakrishnan v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, No. CIV.A. 08-4315, 2009 WL 2175974, at *4 (E.D. La. July 21, 2009); *Trotta*, 2017 WL at *3. However, there is no allegation the so-called "fecal harassment" continued after the filing of the EEOC charge.
[43] R. Doc. 1; R. Doc. 45-1, p.2.
[44] R. Doc. 38-1.
[45] R. Doc. 38-1, pp. 11-12.
[46] *Id.*, p.11.

retaliation that produces an injury or harm."[47] To establish such injury or harm, the Supreme Court stated that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[48]

Defendant contends in its motion that Plaintiff cannot show an adverse employment action as a result of the alleged complaint of sexual harassment because there was no material change in Plaintiff's working conditions.[49] Instead, Defendant asserts, Plaintiff worked the same shift, with the same hours and duties as before and after the complaint was allegedly made, and thereafter received positive annual evaluations and yearly raises.[50] Defendant points out that Plaintiff's evidence shows that the men's restroom was "badly messed up" two to four times over the four-year period of "fecal harassment" and the women's restroom was "badly messed up" approximately six to twelve times over that period.[51] Defendant argues that, although Plaintiff may have had to clean up the messes, to do so was within her job duties as a maintenance associate.[52] Finally, Defendant asserts Plaintiff can neither identify any employee that made the messes nor show that Defendant's managers or employees had knowledge of or directed such conduct.[53]

Here, Plaintiff does not establish a prima facie case of an adverse employment action. Plaintiff states that she believed certain employees were responsible for the soiled bathrooms and that she reported the existence of the soiled bathrooms to various employees and floor managers, but nothing was done about them. In her opposition to Defendant's motion, Plaintiff correctly cites to

---

[47] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006).
[48] *Id.* (internal quotation marks omitted).
[49] R. Doc. 38-1, p.12. Notably, Defendant in its motion does not cite the standard for judging an adverse employment action in a retaliation claim set forth in *Burlington N. & Santa Fe Ry. Co. v. White*.
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id.*, pp.12-13.

the Supreme Court's standard for determining an adverse employment action in a retaliation claim, but rather than address that standard and the arguments of Defendant that do apply, she simply states the "alleged fecal harassment qualifies" as an adverse employment action.[54] Plaintiff thus fails to show the required "material adversity" or "significant" harm, as opposed to trivial harms.[55] Although the alleged incidents are certainly unpleasant as described, the Court does not find they reached the level of acts "likely to dissuade" Plaintiff from pursuing her complaint of sexual harassment.[56] Plaintiff elsewhere notes her age, some limited cognitive ability, and anxiety.[57] The standard the Court must apply in determining harm is an objective one, and the "reactions of a reasonable employee."[58] The Court's focus must be on "the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position …."[59] Applying this standard and "considering all the circumstances,"[60] the Court finds Plaintiff has not established there exists a genuine issue of material fact that necessitates trial as to the existence of an adverse employment action.

### iii. Causal Connection

Even though the Court concludes Plaintiff has failed to establish a triable issue as to an adverse employment action, the Court also finds there is no genuine issue requiring trial as to a causal connection between the protected activity and the alleged adverse employment action. In establishing the causal connection, Plaintiff is not required to show that the protected activity was

---

[54] R. Doc. 45, p.13. Defendant in its reply brief also fails to address the standard articulated in *Burlington N. & Santa Fe Ry. Co. v. White, supra.* R. Doc. 49, p.3 and n.4.
[55] *Id.*
[56] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. at 70, 126 S. Ct. at 2416.
[57] R. Doc. 45, p.1.
[58] *Id.*, at 69-70, 126 S.Ct. at 2415 ("An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.").
[59] *Id.*, at 69-70, 126 S.Ct. at 2416.
[60] Id., at 71, 126 S.Ct. at 2417 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

the "sole factor motivating the employer's challenged decision."[61] However, Plaintiff must produce evidence showing that "the employer's decision to [act adversely against the employee] was based in part on knowledge of the employee's protected activity."[62] In determining whether a causal link exists, a court may consider the temporal proximity between the protected activity and the adverse employment action.[63] However, temporal proximity alone is not sufficient to establish a causal link between the protected activity and the adverse employment action.[64] Ultimately, Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.[65]

In its motion, Defendant asserts Plaintiff cannot show this third element of a prima facie retaliation case. Defendant points out there is no evidence linking Plaintiff's complaint to "Ned" about "Harry" in 2013 or 2014 to the soiling of the restrooms allegedly done by other co-workers.[66] Defendant argues that, although Plaintiff claims she saw "Ned" meet with "Harry" and some unidentified managers after she made her complaint, Plaintiff has no knowledge if "Ned" reported the complaint to management; nor could she have any knowledge of what was said in the meeting.[67] Thus, Defendant argues, Plaintiff's claim is speculative and based solely on the fact that she saw "Harry" smiling after leaving an office with the unidentified managers.[68] Defendant asserts that Plaintiff acknowledged neither the "fitting room ladies" nor the "unloaders", whom she believes created the messes, apparently knew her, "Harry," or "Ned," or had any motive to

---

[61] *Trotta*, 2017 WL at *5 (E.D. La. Jan. 13, 2017) (citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).
[62] *Id*. (citing *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)).
[63] *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001); *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).
[64] *See Zaffuto v. City of Hammond*, 308 F.3d 485, 493-94 (5th Cir. 2002); *Chen v. Ochsner Clinic Found.*, 630 F. App'x 218, 226 (5th Cir. 2015).
[65] *University of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013).
[66] R. Doc. 38-1, p.14.
[67] *Id.*
[68] *Id.*

retaliate against her.[69] Defendant asserts Plaintiff, other than saying it went through her mind, can point to no evidence linking the sexual harassment complaint to the motivation behind the messes made in the restrooms.[70]

Although the Fifth Circuit has held that temporal proximity alone is not enough to establish a causal link, Plaintiff responds that she has otherwise satisfied her burden of production by showing the temporal proximity. Asserting she has met her burden of establishing a prima facie case, Plaintiff contends that, because Defendant "does not state a legitimate, non-discriminatory reason for the fecal harassment, plaintiff need only show prima facie temporal causation and is not required to show more."[71] The problem for Plaintiff is that in making a prima facie case she must demonstrate both that the fecal harassment was an adverse employment action and that Defendant's alleged participation in the fecal harassment was based in part on knowledge of Plaintiff's sexual harassment complaints. Plaintiff can point only to the temporal proximity of the "fecal harassment" to the complaint to "Ned" of sexual harassment by "Harry," "Harry" going into a room with three managers, and then "Harry" grinning at her thereafter.[72] Plaintiff's evidence as to who created the messes and why amounts to speculation, as it does not link the alleged "messing" of the bathrooms, allegedly done by the "fitting room ladies" or the "unloaders," to the complaint of sexual harassment. The bottom line for the Court is that Plaintiff cannot point to any evidence other than her own belief that raises a genuine issue of material fact as to whether the messes in the bathrooms had any relationship to Plaintiff's sexual harassment complaint. Because the record contains nothing connecting the protected activity and the alleged retaliation, "mere

---

[69] *Id.*, p.15. Defendant suggests that the messes could have been made as a result of Plaintiff's complaint about a "Mr. Harold," who had banged on the restroom door while Plaintiff was inside cleaning it, because Plaintiff had seen Mr. Harold with the "fitting room ladies" and the "unloaders."
[70] *Id.*
[71] R. Doc. 45, p.13.
[72] *Id.*

proximity in time, without more, cannot establish a prima facie case that the [adverse employment action] was retaliatory."[73] Therefore, relying on temporal proximity alone, Plaintiff fails to establish a causal connection between the protected activity and the alleged adverse employment action.[74]

## CONCLUSION

For the reasons set forth above, the Court finds Plaintiff has failed to create the requisite genuine dispute of material fact as to whether she established a prima facie case of retaliation, based on her failure to show either that she suffered an adverse employment action or the existence of a causal link between the protected activity and Defendant's alleged retaliatory conduct. Accordingly, Defendant's Motion for Summary Judgment[75] is **GRANTED** and her claims are hereby dismissed with prejudice.

**New Orleans, Louisiana**, on this __5th__ day of May 2020.

_____
**GREG GERARD GUIDRY**
**UNITED STATES DISTRICT JUDGE**

---

[73] *Chen*, 630 F.App'x at 226 (quoting *Zaffuto, supra*, 308 F.3d at 493)
[74] Because Plaintiff has failed to establish a prima facie case of retaliation, the burden of production does not shift to Defendant to provide a non-discriminatory explanation for the alleged adverse employment action.
[75] R. Doc. 38.